```
            UNITED STATES DISTRICT COURT
            EASTERN DISTRICT OF KENTUCKY
              CENTRAL DIVISION at LEXINGTON
```

AMY JOLENE SWARTZ,              )
                                )
    Plaintiff,                  )
                                )          Civil Action No.
v.                              )          5:14-CV-284-JMH
                                )
CAROLYN W. COLVIN, ACTING       )      **MEMORANDUM ORDER AND OPINION**
COMMISSIONER OF SOCIAL          )
SECURITY,                       )
                                )
    Defendant.                  )

                     \*\*\*   \*\*\*   \*\*\*

This matter is before the Court upon cross-motions for Summary Judgment [DE 15, 16] on Plaintiff's appeal of the Commissioner's denial of her application for supplemental security income and disability insurance benefits.[1]  For the reasons discussed below, the Commissioner's motion will be granted and Plaintiff's motion will be denied.

**I. Overview of the Process and the Instant Matter**

The Administrative Law Judge (ALJ), in determining disability, must conduct a five-step analysis:

> 1.   An individual who is working and engaging in substantial gainful activity is not disabled, regardless of the claimant's medical condition.
>
> 2.   An individual who is working but does not have a "severe" impairment which significantly limits his

---

[1]    These are not traditional Rule 56 summary judgment motions. Rather, it is a procedural device by which the parties bring the administrative record before the Court.

> physical or mental ability to do basic work activities is not disabled.
>
> 3. If an individual is not working and has a severe impairment which "meets the duration requirement and is listed in appendix 1 or is equal to a listed impairment(s)", then he is disabled regardless of other factors.
>
> 4. If a decision cannot be reached based on current work activity and medical facts alone, and the claimant has a severe impairment, then the Secretary reviews the claimant's residual functional capacity and the physical and mental demands of the claimant's previous work. If the claimant is able to continue to do this previous work, then he is not disabled.
>
> 5. If the claimant cannot do any work he did in the past because of a severe impairment, then the Secretary considers his residual functional capacity, age, education, and past work experience to see if he can do other work. If he cannot, the claimant is disabled.

*Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994) (citing 20 C.F.R. § 404.1520 (1982)). "The burden of proof is on the claimant throughout the first four steps of this process to prove that he is disabled." *Id.* "If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Secretary." *Id.*

The ALJ determined that Plaintiff had not engaged in substantial gainful activity since March 2001, the alleged onset date of her disability. Considering step two, the ALJ found that Plaintiff had the severe impairments of fibromyalgia, asthma, anxiety, and depression. The ALJ concluded, however, that none of Plaintiff's impairments met or medically exceeded the severity of

2

an impairment listed in 20 C.F.R. Part 404 Subpart P, Appendix 1. Considering the medical evidence, the ALJ determined that Plaintiff had the residual functional capacity (RFC) to perform less than the full range of light work. Specifically, the ALJ determined that Plaintiff can lift/carry no more than 20 pounds occasionally and 10 pounds frequently; can stand/walk no more than six hours out of an eight-hour day and for no more than one hour at a time; can sit for no longer than six hours out of an eight-hour day and for no more than one hour at a time; can push/pull up to exertional limitations; can do no more than occasional balancing, stooping, kneeling, crouching, crawling, or climbing ramps or stairs, but no climbing of ladders, ropes or scaffolds; no work around dangerous, moving machinery or unprotected heights; no work around dusts, fumes, gases, odors, or other pulmonary irritants; no work around concentrated heat or cold; no more than simple, routine work; no more than occasional interaction with co-workers or supervisors; no more than occasional interaction with the general public; no more than occasional decision making or use of judgment; and no more than occasional, if any, change in the workplace setting.

The ALJ presented this hypothetical to a vocational expert (VE) and, based on the VE's opinion, determined that although Plaintiff was unable to perform any past relevant work, there are

jobs that exist in significant numbers in the national economy that she can perform and, therefore, she is not disabled.

## II. Standard of Review

In reviewing the ALJ's decision to deny disability benefits, the Court may "not try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). Instead, judicial review of the ALJ's decision is limited to an inquiry into whether the ALJ's findings were supported by substantial evidence, 42 U.S.C. § 405(g); *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001) (citations omitted), and whether the ALJ employed the proper legal standards in reaching his conclusion. *See Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip*, 25 F.3d at 286 (citations omitted).

## III. BACKGROUND

At the time of the ALJ's decision, Plaintiff was thirty-six years old and lived with her husband and two sons. She had her GED and her previous employment included work in accounting and telemarketing. Plaintiff reported an inability to work due to depression and anxiety, fibromyalgia and chronic fatigue. She

4

reported that her most debilitating impairment, however, was "intestinal problems," which caused her to spend excessive time in the bathroom several days per week. During her hearing with the ALJ, she reported that this problem was helped somewhat by medication. She also reported that she experienced anxiety attacks every other day, which were worsened by "everyday life."

Plaintiff's primary care physician was Jeffrey McGinnis, MD. Treatment notes in the record range from 2001 to 2011. Dr. McGinnis and his physician's assistant treated Plaintiff a number of times over the years, prescribing medications and making referrals on a few occasions. Specifically, Dr. McGinnis ordered a gastroenterology consult related to Plaintiff's intestinal complaints and also referred Plaintiff to Pathways Inc. for outpatient counseling.

Andrew Koerber, M.D. performed a consultative examination of Plaintiff on behalf of the Administration in September 2011. Dr. Koerber found that Plaintiff's strength and range of motion were normal and that she had the ability to perform exertional work-related activities such as sitting, standing, moving about, lifting, and carrying objects. David Atcher, M.D. performed a psychiatric consultative examination also in September 2011. He assigned a Global Assessment Functioning score of 70, finding that she could reliably carry through with simple tasks, as opposed to complex tasks and directions. Further, Dr. Atcher opined that

5

Plaintiff would not respond well to the typical pressures of a work environment.

**IV. ANALYSIS**

### A. The ALJ provided sufficient reasons for discounting Dr. McGinnis's opinion.

The "treating source rule" requires an ALJ to give the opinion of a treating physician controlling weight if the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with other substantial evidence in [the] case record." *Wilson v. Comm'r of Social Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). If the treating source's opinion is not given controlling weight, the ALJ must provide good reasons for weight given. *Id.* The factors to be considered include the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, the supportability of the opinion and the consistency of the opinion with the overall record, and whether the treating source specializes in the matters at issue. *Id.*

While the ALJ could have provided a more detailed analysis of his reasons for rejecting Dr. McGinnis's opinion, he provides sufficient reasons for according the opinion little weight. For instance, the ALJ notes that Dr. McGinnis's opinions rest primarily on Plaintiff's subjective complaints rather than objective testing. Although fibromyalgia is one of Plaintiff's primary

6

diagnoses and reasons for seeking disability benefits, there is no medical documentation indicating that Dr. McGinnis, or any other practitioner, performed palpation testing for tender points. The objective testing that Plaintiff did undergo—an esophagogastroduodenoscopy and a colonoscopy—were largely unremarkable. The ALJ also noted that Dr. McGinnis's opinion was inconsistent with his own treatment notes, as many of the limitations he assessed had little basis, or were not even mentioned at all, in the progress notes from his treatments. Perhaps most compelling is that Plaintiff filled out her own medical source statement and Dr. McGinnis simply signed it. Plaintiff conceded at her hearing that Dr. McGinnis instructed her to fill out the form herself and that he would mark out anything with which he did not agree. The Court has reviewed Dr. McGinnis's medical source statement and fails to find any item that has been marked out. Regardless, the Court finds that the ALJ gave adequate reasons for declining to give Dr. McGinnis's opinion controlling weight.

    **B.**    **The RFC presented to the Vocational Expert was supported by substantial evidence.**

Plaintiff objects to the hypothetical presented to the VE because, Plaintiff argues, it is inconsistent with Dr. Atcher's opinion of Plaintiff's mental ability, upon which the ALJ purported to rely. Specifically, Dr. Atcher opined that Plaintiff "would

7

not respond well to the usual pressures of the work environment due to severe anxiety when around other people." The hypothetical included occasional contact with the general public, co-workers, and supervisors. Plaintiff also objects to the lack of any limitation on Plaintiff's ability to sustain work activity involving reaching in all directions including overhead, fingering and/or feeling. Plaintiff argues that this omission is inconsistent with Dr. McGinnis's opinion. As the Court has already discussed, however, the ALJ gave appropriate reasons for discounting Dr. McGinnis's opinion.

The Court finds that the RFC is consistent with Dr. Atcher's opinion and the other evidence of record. Although Dr. Atcher opined that Plaintiff would have difficulty with work pressures, he did not indicate the specific degree of interaction he believed she could tolerate. Dr. Atcher assessed her Global Assessment of Functioning to be 70, indicating that she was functioning pretty well with some mild symptoms. The ALJ noted that Plaintiff took part in a variety of social activities including regular church attendance, talking with friends, and visiting with family. Further, Plaintiff had a driver's license and drove as needed, going to the store and also participating in hobbies. Accordingly, the ALJ's finding that Plaintiff was only partially credible was well founded and the RFC is supported by substantial evidence.

## V. CONCLUSION

Accordingly, **IT IS ORDERED:**

(1) that the Commissioner's motion for summary judgment, [DE 16], is **GRANTED;** and

(2) that Plaintiff's motion for summary judgment, [DE 15], is **DENIED.**

This the 5th day of August, 2015.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge